UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DENA PEREZ, an individual,

NO. CIV. S-07-927 FCD GGH

     Plaintiff,

    v.

<u>MEMORANDUM AND ORDER</u>

CITY OF PLACERVILLE, GEORGE
NEILSEN, and
CHRISTIAN BEYER,

     Defendants.

----oo0oo----

This matter is before the court on defendants City of Placerville (the "City") and Christian Beyer's ("Beyer") (collectively, "defendants")[1] motion for summary judgment. By the motion, defendants seek adjudication in their favor on plaintiff's complaint against them, alleging primarily civil rights violations by defendants.[2]

---

[1]  The parties stipulated to dismiss defendant George Neilsen. (<u>See</u> Stip. & Order, filed May 19, 2008.)

[2]  Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. <u>See</u> E.D. Cal. L.R. 78-230(h).

1

1    On May 13, 2006, Placerville police officers went to the

2  home of plaintiff Dena Perez ("plaintiff") intending to arrest a

3  parolee, Gary Masse ("Masse"), who they believed lived at the

4  home.   In the process of attempting to secure the location,

5  defendant Officer Beyer shot and killed plaintiff's dog.   Officer

6  Byer maintains the killing was in defense of his fellow officer

7  and police canine who were being attacked by the dog.   Plaintiff

8  did not witness the shooting as she arrived at her home after the

9  incident.   Ultimately, the officers did not find Masse at the

10  residence because he was in custody at a correctional facility in

11  Tracy, California.

12    As a result of the incident, plaintiff brings this action

13  against the City and Beyer, alleging claims for (1) unlawful,

14  warrantless seizure of plaintiff's residence in violation of the

15  Fourth and Fourteenth Amendments; (2) unlawful, warrantless entry

16  and search of plaintiff's residence in violation of the Fourth

17  Amendment; (3) unlawful search and seizure of plaintiff in

18  violation of the Fourth Amendment; (4) unlawful seizure of

19  personalty in violation of the Fourth Amendment; (5) excessive

20  force on persons in violation of the Fourth Amendment;[3]

21  (6) trespass to real property; (7) wrongful eviction;

22  (8) trespass to personal property; (9) negligence;

23  (10) intentional infliction of emotional distress; (11) false

24  arrest/false imprisonment; (12) trespass to chattels/personalty;

25  (13) conversion; and (14) violation of California Civil Code

26

27  _____

28    [3]   Plaintiff brings her constitutional claims pursuant to
    42 U.S.C. § 1983.

2

§ 52.1.[4]

For the reasons set forth below, the court GRANTS in part and DENIES in part defendants' motion.  The court grants the motion with respect to all claims, except plaintiff's claims for unlawful search and seizure of her residence in violation of the Fourth Amendment (first and second claims for relief) and trespass to real property (sixth claim for relief).  With respect to those claims, triable issues of fact remain as to whether defendants had probable cause to believe that parolee Masse lived at plaintiff's residence, thereby providing legal grounds to enter the premises without a warrant.

## BACKGROUND[5]

On May 13, 2006, the Placerville Police Department ("PPD") received a "CLETS" document[6] from the Amador County Sheriff's

---

[4]    In opposing the motion, plaintiff abandons and does not oppose defendants' motion with respect to her seventh claim for wrongful eviction and eleventh claim for false arrest/false imprisonment.  As such, the court does not discuss those claims herein, and it GRANTS defendants' motion as to those claims.

[5]    Unless otherwise noted, the court finds the following facts undisputed.  (See Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts, filed July 21, 2008 ["RUF"].)  In some critical respects, plaintiff attempts to dispute defendants' undisputed facts but she has not submitted material and admissible evidence to do so.  As such, the court finds those facts undisputed.  Where plaintiff has submitted material and admissible evidence to dispute relevant facts, the court construes the facts in the light most favorable to plaintiff.
       The parties have filed various objections to each other's evidence.  To the extent the court cites to any such objected-to evidence, it rules on the objection herein.  In all other respects, the parties' evidentiary objections are overruled as moot since the court does not rely on said evidence as a basis for its findings.

[6]    "CLEATS" refers to the California Law Enforcement Telecommunications System.  Plaintiff objects to the admission of the document on hearsay grounds.  However, said document is properly admitted under the hearsay exception for official

3

1 Department, which consisted of an Abstract of Warrant regarding a

2 suspect named, Gary Joseph Masse.  (RUF ¶ 12.)   The Abstract of

3 Warrant indicated Masse was not in custody.  (RUF ¶ 14.)

4      Based on prior contact with Masse,[7] PPD officers believed

5 Masse was plaintiff's boyfriend and resided with her at

6 plaintiff's residence located at 2335 Greenwing Lane,

7 Placerville, California.  (RUF ¶s 5, 8, 17, 58.)  As a condition

8 of his parole, Masse had also previously given that address to

9 law enforcement as his legal residence.  (RUF ¶ 4.)  Masse,

10 however, did not own the residence, which was owned solely by

11 plaintiff.  (Pl.'s Add'l Disputed Facts ["ADF"], ¶ 69.)[8]  The

12 officers were also aware that Masse was a parolee and had waived

13 his rights with regard to searches and seizures of his person,

14 property and residence.  (RUF ¶ 57.)  The officers additionally

15 knew that Masse had attempted to evade arrest on a prior occasion

16 at the 2335 Greenwing Lane residence.  (RUF ¶ 18.)

17      PPD Sergeant Cannon ("Cannon") confirmed that the warrant

18 was a valid, active arrest warrant.  (RUF ¶ 16.)  No one at the

19 PPD contacted Masse's parole officer to request any information

20

21 records.  People v. Martinez, 22 Cal. 4th 106, 134 (2000)
22 (affirming the admission of a CLEATS document, as evidence the
   defendant was a habitual offender, under the official records
23 exception to the hearsay rule).

24      [7]   Previously, on March 23, 2006, Masse was involved in a
   hit and run motor vehicle accident.  (RUF ¶ 1.)  As a result of
25 that incident, PPD officers attempted to arrest Masse at
   plaintiff's residence but he fled the scene.  (Id.)  Masse was
26 subsequently taken into custody by PPD officers on April 4, 2006
   for violation of his parole.  (RUF ¶ 2.)  He was booked into the
27 El Dorado County Jail by the PPD.  (Id.)

28      [8]   See Defs.' Resp. to Pl.'s Additional Disputed Facts,
   filed July 29, 2008 (Docket #29).

                                4

1  about Masse. (ADF ¶ 64.)  Thereafter, Cannon and PPD officers

2  Christopher Hefner ("Hefner"), Jason Alger ("Alger"), Beyer and

3  police canine, Rico, traveled to plaintiff's residence intending

4  to arrest Masse. (RUF ¶ 19.)  The officers did not have a search

5  warrant for the premises. (ADF ¶ 70.)  Upon arrival at the

6  residence, Cannon and Hefner went to the front door. (RUF ¶ 21.)

7  Alger and Beyer went to the right of the residence intending to

8  gain entry to the backyard in order to secure the rear of the

9  residence should Masse attempt to flee as he had done in the

10  past. (RUF ¶ 21.)

11       To ascertain whether a dog was on the premises, Alger, who

12  had police canine Rico with him, made sounds to elicit a response

13  from a dog. (RUF ¶ 27.)[9]  There was no response. (RUF ¶ 27.)

14  Alger looked over the fence and did not see a dog in the

15  backyard. (RUF ¶ 26.)  He then cracked open the gate to the

16  backyard. (RUF ¶ 29.)  The head of a Rottweiler immediately

17  pushed through the gate and attacked Alger and canine Rico. (RUF

18  ¶s 30, 31.)  The Rottweiler was plaintiff's dog, Harley. (RUF ¶

19  30.)  Beyer used pepper spray on both dogs but there was no

20  reaction. (RUF ¶ 33.)  Beyer then shot Harley twice but there

21  was no response. (RUF ¶ 34.)  He then shot Harley a third time,

22  at which point the dog walked away. (RUF ¶ 35.)  The incident

23  occurred in less than one minute and it took place on the street

24

25

26

----

27       [9]   Plaintiff contends the officers were aware of
   plaintiff's dog, and that there was a "Beware of Dog" sign on the
28  gate the officers opened. (ADF ¶s 73, 74.)

1  side of the fence.  (RUF ¶s 36, 37.)[10]  The officers then entered

2  the backyard to secure the rear of the premises, believing their

3  position had been jeopardized.  (RUF ¶ 38.)

4      Plaintiff arrived at the residence minutes after the

5  shooting took place.  (RUF ¶s 22, 41.)  She was advised by the

6  officers that Harley had been shot.  (RUF ¶ 43.)  Plaintiff told

7  the officers that Masse was incarcerated in a correctional

8  facility in Tracy, California.  (RUF ¶ 42.)  No officer searched

9  plaintiff.  (RUF ¶ 51.)

10      After briefly speaking with plaintiff, Cannon radioed

11  dispatch requesting that they locate an emergency veterinarian's

12  office in the area.  (RUF ¶ 44.)  Alger assisted plaintiff in

13  getting Harley into the back of a police vehicle.  (RUF ¶ 45.)

14  Cannon then drove plaintiff and Harley to a veterinarian's office

15  in Shingle Springs, California.  (RUF ¶ 46.)  Cannon left

16  plaintiff and Harley at the office, after confirming that there

17  was a veterinarian present to care for the dog.  (RUF ¶ 48.)

18  Harley subsequently died.  (RUF ¶ 49.)

19  **STANDARD**

20      The Federal Rules of Civil Procedure provide for summary

21  judgment where "the pleadings, depositions, answers to

22  interrogatories, and admissions on file, together with the

23  affidavits, if any, show that there is no genuine issue as to any

24

25      [10]   According to the officers, they arrived at the
   residence at 7:34 p.m.; Harley was shot at 7:37 p.m.; plaintiff
26  arrived at the residence at 7:38 p.m.; plaintiff was advised
   Harley had been shot at 7:40 p.m.; and by 7:50 p.m., Officer
27  Cannon left the scene with plaintiff and Harley to go to the
   nearest veterinarian's office.  (RUF ¶s 39-41, 43, 46.)
28  Plaintiff does not have any material, admissible evidence which
   disputes these facts.

material fact." Fed. R. Civ. P. 56©; see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. See Nissan Fire & Marine, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)

**ANALYSIS**

**A.   Unlawful Search and Seizure of Plaintiff's Residence (1st,[11] 2nd and 6th Claims for Relief)[12]**

Defendants move to dismiss plaintiff's claims relating to the warrantless entry onto her property[13] on the ground that Masse's parole status authorized a search of his residence, which defendants believed was plaintiff's home located at 2335 Greenwing Lane.[14]   Plaintiff does not dispute that Masse was a

---

[11]   Plaintiff brings her first claim for relief for unlawful "seizure of private residence" in violation of the Fourth and Fourteenth Amendments.   This claim is properly analyzed under only the Fourth Amendment.   Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Conner, 490 U.S. 386, 395 (1989)) ("[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' [as does the Fourth Amendment here] against a particular source of government behavior, 'that Amendment, not the more generalized notion of substantive due process' must be the guide for analyzing [the claim]").

[12]   All of plaintiff's constitutional claims are brought pursuant to 42 U.S.C. § 1983.   Section 1983 provides in part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."   Section 1983 confers no substantive rights itself, but rather, "provides remedies for deprivations of rights established elsewhere."   City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).

[13]   Officers did not search the interior of plaintiff's home; they entered only the backyard of plaintiff's residence. Such entry into the "curtilage" of plaintiff's property, however, is sufficient to raise a Fourth Amendment claim.   See U.S. v. Depew, 210 F.3d 1061 (9th Cir. 2000).

[14]   Defendants also argued in one brief paragraph of their opposition that there was no entry onto plaintiff's property because the gate was only "cracked" open slightly before Harley charged Officer Algers.   Defendants offer no legal support for this argument, and the court finds it wholly unavailing.   What is critical to the inquiry is that the gate was opened by officers who intended to enter the backyard to search for and arrest Masse.   Ultimately, they entered the backyard.   These facts are undisputed and give rise to a proper Fourth Amendment claim.

parolee at the time of the incident, and that pursuant to his
parole status, Masse waived his Fourth Amendment rights such that
officers were legally entitled to search his residence without a
warrant.  See Cal. Penal Code § 3067.  However, plaintiff
disputes that her home on Greenwing Lane was *Masse's* residence
and asserts that defendants did not have the requisite probable
cause to believe Masse resided in her home.

Before conducting a warrantless search pursuant to a
parolee's parole condition, law enforcement officers must have
"probable cause to believe that the parolee is a resident of the
house to be searched."  Motley v. Parks, 432 F.3d 1072, 1080 (9th
Cir. 2005).[15]  The Ninth Circuit has applied a "relatively
stringent standard" in determining what constitutes probable
cause that a residence belongs to a person on supervised release:

> [T]he facts known to the officers at the time of the
> search must have been sufficient to support a belief,
> in a 'man of reasonable caution,' that [the parolee]
> lived at [the subject residence].

United States v. Howard, 447 F.3d 1257, 1262 (9th Cir. 2006).
This is a higher standard than a mere well-founded suspicion.
Id.  The Ninth Circuit has required that officers have "very
strong facts" to believe a parolee resides at a particular
location.  Id. at 1263.

Ultimately, nothing in the law justifies the entry into and
search of a third person's house to search for a parolee.  Cuevas

---

[15]    Defendants improperly cite Thorton v. Lund, 538 F.
Supp. 2d 1053 (E.D. Wis. 2008) as sole support for the applicable
standard, arguing officers must only have a "reasonable belief"
that a parolee lives at a particular residence.  Thorton does not
set forth the correct standard, and clearly, this Wisconsin
district court opinion is not binding on this court.

v. De Roco, 2008 WL 2552572, *4 (9th Cir. June 27, 2008).  The
Fourth Amendment's protection against unreasonable searches of a
person's home is not diminished by the mere presence of a guest
in the home.  Id.  Therefore, officers must be "reasonably sure
that they are at the *right* house" before relying on a parolee's
search condition to search a person's home.  Motley, 432 F.3d at
1079 (emphasis in original).  A parole condition indicates "only
the parolee's acquiescence to a warrantless search of *his own*
residence."  Id. (emphasis added).

        Thus, the court must consider what information the officers
in this case had about Masse's residence on May 13, 2006.
Defendants emphasize that as a condition of his parole, Masse was
required, pursuant to Penal Code § 3003, to provide his address
and the effective date of the address.  Masse provided
plaintiff's address at 2335 Greenwing Lane as his residence.
(See Ex. C to Defs.' Evid., filed June 13, 2008 [hereinafter, the
"Face Sheet"].)  Defendants also stress that on May 13, 2006,
they were aware that other PPD officers had previously tried to
arrest Masse at the same location, but he fled from the officers
and was not arrested until days later.

        This latter fact while providing some support for
defendant's position also cuts against it.  Even though there is
no evidence the officers involved in this incident were also
involved in the prior incident in which Masse fled from the home,
it is the prior incident which gave rise to Masse's incarceration
by the PPD.  Indeed, this prior incident occurred just six weeks
before the subject incident.  PPD officers eventually arrested
Masse on April 4, 2006, and he was jailed at the El Dorado County

10

Jail.  Despite this recent incident involving their department, defendants state they relied on the Abstract of Warrant which stated that Masse was not in custody.  Defendants maintain they did not know of Masse's incarceration until plaintiff informed them of the fact on May 13, 2006.

Significantly, the Abstract of Warrant, which defendants insist prompted their actions on May 13, provided an address which conflicted with the address on Masse's Face Sheet.  The Abstract of Warrant stated Masse's address as *2237* Greenwing Lane, Placerville, California, not 2335 Greenwing Lane.  Despite the discrepancy, defendants did nothing to confirm Masse's address; they did not contact his parole officer; they did not consult any other law enforcement records to determine whether Masse was incarcerated.

Nevertheless, defendants contend that based on the Ninth Circuit's decision in Motley, defendants were entitled to rely on their knowledge of Masse's most recent address, as reported by him to his probation officer.  432 F.3d at 1081-82.  Like here, in Motley, the parolee was actually in state custody at the time of the search but the officers were not aware of that fact.  The Ninth Circuit held that even though the evidence showed that the parolee's girlfriend solely resided in the apartment searched, in that "everything was in her name" and "she paid the rent and all bills associated with the apartment," the court found that the officers properly searched the home based on the parolee's report of the address as his residence to his probation officer.  432 F.3d at 1081-82.  Defendants contend that the same is true here, and that the cases plaintiff cites, Howard and Cuevas, are

factually inapposite.

The court agrees that Howard and Cuevas are not pertinent to the inquiry here as those cases addressed whether officers had probable cause to search an *unreported* address--in those cases the parolee had not given the address of the residence searched as his legal residence.  See Cuevas, 2008 WL 2552572, *1-2 (the parolee's Face Sheet indicated his most recent address as "Self, Placerville," with a street address "to be determined," and previously the resident of the home had advised the officers that the parolee did not live at the residence and there was an order in place requiring the parolee to stay away from the resident); Howard, 447 F.3d at 1268 (there was no reported address for the parolee and both the parolee and his girlfriend had previously informed officers that the parolee did not reside with his girlfriend).  Thus, Cuevas and Howard are distinguishable based on these critical facts.

Contrary to those cases, here, Masse gave his parole officer plaintiff's address as his residence, and officers had recently contacted Masse at that address.  In this case, officers were not informed by plaintiff, until the day of the incident, that Masse did not live at the residence.  In these respects, defendants are correct that Motley is the most factually analogous case. However, Motley does not dictate a finding of probable cause in this case because additional facts are present here which raise triable issues of fact as to whether defendants had probable cause to believe Masse resided at plaintiff's home.

As set forth above, most significantly, the Abstract of Warrant provided a different address for Masse.  Yet, officers

did nothing to resolve the discrepancy between the warrant and

the address Masse had provided to his probation officer.

Additionally, the PPD arrested Masse just six weeks prior to the

incident in question and incarcerated him in the El Dorado County

Jail.  A review of their own records seemingly could have easily

revealed this fact and prompted an investigation into whether

Masse was still incarcerated.  However, defendants did not make

these inquiries.  Under these facts, a reasonable jury could find

in plaintiff's favor that defendants lacked probable cause to

believe that Masse resided at plaintiff's home.  <u>Motley</u>, 432 F.3d

at 1079; <u>Howard</u>, 447 F.3d at 1263 (officers must be reasonably

certain they are at the "right" house and their belief must be

based on "very strong facts").  Therefore, defendants' motion as

to plaintiff's Fourth Amendment claims for unlawful search and

seizure of her residence are DENIED.[16]  For the same reasons,

plaintiff's state law claim for trespass to real property, which

requires a showing of an unauthorized entry on to land, also

survives.  <u>See</u> <u>Church of Christ Hollywood v. Sup. Ct.</u>, 99 Cal.

App. 4th 1244 (2002).

Finally, the court notes that plaintiff's Section 1983

claims for violation of the Fourth Amendment survive with respect

---

[16]    Plaintiff's second claim for relief is styled as a
claim for "unlawful warrantless entry into and search of private
residence" in violation of the Fourth Amendment.  It appears to
be duplicative of plaintiff's first claim for relief, styled as a
claim for "unlawful and unreasonable warrantless seizure of
private residence" in violation of the Fourth and Fourteenth
Amendments.  At this juncture, the court denies defendants'
motion as to both claims as plaintiff can survive summary
judgment on a Fourth Amendment claim for unlawful search and
seizure of her home.  However, at the time of the final pretrial
conference, in order to streamline the pleadings, plaintiff
should consider abandoning one of these claims.

to Beyer only.  As to the City, defendants correctly argue

plaintiff does not have a viable claim for relief against the

City of Placerville under <u>Monell</u> and its progeny.   <u>Monell v.

Department of Social Servs.</u>, 436 U.S. 658, 691 (1978) (holding

municipalities are "persons" subject to damages liability under

Section 1983 where "action pursuant to official municipal policy

of some nature cause[s] a constitutional tort").  The Supreme

Court made clear that the municipality itself must cause the

constitutional deprivation, and that a city may not be held

vicariously liable for the unconstitutional acts of its employees

under the theory of respondeat superior.  <u>Id.</u>  Thus, the Ninth

Circuit has recognized that under <u>Monell</u>, a plaintiff may

establish municipal liability in one of three ways:

> A section 1983 plaintiff may establish municipal liability
> in one of three ways.  First, the plaintiff may prove
> that a city employee committed the alleged constitutional
> violation pursuant to a formal governmental policy or
> a longstanding practice or custom which constitutes the
> standard operating procedure of the local governmental
> entity.   Second, the plaintiff may establish that the
> individual who committed the constitutional tort was an
> official with final policy-making authority and that the
> challenged action itself thus constituted an act of
> official governmental policy.  Whether a particular
> official has final policy-making authority is a question
> of state law.  Third, the plaintiff may prove that an
> official with final policy-making authority ratified a
> subordinate's unconstitutional decision or action and the
> basis for it.

<u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir. 1992)

(internal citations and quotations omitted).

Here, plaintiff wholly fails to establish municipal

liability for the City through any of the three modes described

in <u>Gillette</u>.  Indeed, plaintiff does not discuss <u>Monell</u> in her

opposition or otherwise address defendants' motion on this issue

14

in any respect.  Even construing the facts in the light most favorable to plaintiff, only the first theory is potentially applicable to plaintiff's allegations under Section 1983.  Yet, plaintiff provides no evidence to support any allegation that the City had a policy or custom which inflicted injury upon her.  As such, defendants' motion with respect to this issue is GRANTED; plaintiff's first and second claims for relief may be asserted against Beyer only.

**B.   Unlawful Search and Seizure of Plaintiff's Person (3rd Claim for Relief)**

In her third claim for relief, plaintiff alleges that during the search of her home, she was "searched and seized by defendants for an unreasonable and lengthy period of time, and in a manner obviously unnecessarily restrictive." (Compl., filed May 16, 2007, ¶ 36.)  There are no facts to support this allegation, however.  Indeed, in opposing defendants' motion, plaintiff concedes she was not "physically abused or handcuffed." (Opp'n, filed July 21, 2008, at 19.)  As set forth above, the undisputed facts are that plaintiff arrived at her home within a minute of the shooting of her dog; she voluntarily spoke with officers for no more than ten minutes about the shooting and Masse's whereabouts; and within fifteen minutes of arriving at home, she was driven by Officer Cannon to the nearest veterinarian's office to seek care for her dog.  These facts simply do not give rise to an actionable Fourth Amendment claim for unlawful search and seizure of plaintiff's person.  See United States v. Mendenhall, 446 U.S. 544 (1980).  Defendants' motion is GRANTED as to this claim.

15

C.   **Unlawful Seizure of Personalty (4th, 8th, 12th and 13th Claims for Relief)**

Defendants move to dismiss plaintiff's claims relating to the killing of her dog, Harley, arguing plaintiff cannot establish a violation of law because Beyer killed Harley in defense of his fellow officer, Algers, and police canine, Rico, who were being attacked by the dog.  As to plaintiff's constitutional claim for unlawful seizure of personalty in violation of the Fourth Amendment, defendants move for summary judgment on the ground of qualified immunity.  As to plaintiff's state law claims, for trespass to personal property, trespass to chattels, and conversion, defendants move to dismiss on the ground that a person is privileged to commit said torts "for the purpose of defending himself or a third person."  Church of Scientology v. Armstrong, 232 Cal. App. 3d 1060, 1072 (1991).

Public officials are entitled to qualified immunity for acts that do not violate "clearly established . . . constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Thus, when considering a defendant's motion for summary judgment on the ground of qualified immunity, "[t]he threshold question . . . is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the officer's conduct violated a constitutional right."  Bingham v. City of Manhattan Beach, 329 F.3d 723, 729 (9th Cir. 2003), superceded by 341 F.3d 939 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  If a violation can be made out, the next step is to determine whether the right violated or the law governing the official's conduct was clearly

16

established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (quoting Saucier, 533 U.S. at 202); Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir. 1993).

Where a defendant's conduct violates constitutional rights and the law is clearly established, the defendant may not claim qualified immunity.

As to the threshold inquiry, whether the facts show that Beyer violated plaintiff's Fourth Amendment rights, the Ninth Circuit has held that the killing of a dog is a destruction of property recognized as a seizure under the Fourth Amendment and can constitute a cognizable claim under Section 1983. Fuller v. Vines, 36 F.3d 65, 68 (9th Cir. 1994). Reasonableness is the touchstone of any seizure under the Fourth Amendment. Therefore, to comply with the Fourth Amendment, the seizure in this case, the killing of Harley, must have been reasonable under the circumstances. The court must look to the "totality of the circumstances to determine whether the destruction of property was reasonably necessary to effectuate the performance of the law enforcement officer's duties." San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 975 (9th Cir. 2005). The seizure becomes unlawful when it is more intrusive than necessary. Id. To determine whether the shooting of plaintiff's dog was reasonable, the court must balance the nature and quality of the intrusion on plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake. Graham v. Conner, 490 U.S. 386, 396 (1989).

17

As sole support for her contention that the facts here demonstrate a Fourth Amendment violation, plaintiff relies on Hells Angels, wherein the Ninth Circuit affirmed the denial of qualified immunity to San Jose police officers who shot and killed the plaintiffs' dogs while executing search warrants. There, the court found that viewing the facts in the light most favorable to the plaintiffs, "the seizures were unreasonable, in violation of the Fourth Amendment." 402 F.3d at 976. However, the facts in Hells Angels are clearly distinguishable from this case.

In Hells Angels, it was undisputed that the officers knew of the plaintiffs' dogs a week prior to executing the search warrants; the officers had time, the court found, to develop strategies for immobilizing the dogs, but the officers did not do so. Id. at 977 (the officers "'created an entry plan designed to bring them into proximity of the dogs without providing themselves with any non-lethal means for controlling the dogs. The officers, in effect, left themselves without any option but to kill the dogs in the event they-quite predicably-attempted to guard the home from invasion.'"). The court found that the officers "developed no realistic plan other than shooting the dogs while serving the search warrants." Id. at 976. Because the officers were "not presented with exigent circumstances that necessitated killing the dogs," their conduct was found unreasonable under the Fourth Amendment. Id. at 978.

To the contrary, in this case, exigent circumstances were present. The officers did not have weeks to plan this search; they acted on the arrest warrant the same day they received it.

18

At best, the facts suggest here that the officers suspected a dog might be present at the scene but they had no confirmation of that fact. Officer Algers acted reasonably in attempting to confirm the presence of a dog by making sounds to elicit a response from a dog and looking over the back fence. When there was no response and he did not see a dog, he opened the gate slightly. He was immediately attacked by Harley. Beyer responded first with pepper spray. Only once that did not work did he use his weapon to shoot Harley. After two shots the dog was still not subdued so Beyer shot the dog a third time. Within twenty minutes of the shooting, the officers transported Harley to the nearest veterinarian's office. See Hells Angels, 402 F.3d at 977 (recognizing that the governmental interest in safety of law enforcement officers may well provide a "sound justification" for the killing of a dog, particularly where officers are suprised by the presence of a dog).

Plaintiff does not submit any evidence to dispute these facts. She did not witness the incident, nor does she provide any testimony of the officers or others, including neighbors, which puts in dispute the facts as reported by the officers involved. As such, plaintiff cannot withstand summary judgment on this claim. Plaintiff has not raised a triable issue of fact sufficient to establish a violation of her Fourth Amendment rights.

Having determined that officer Beyer did not violate plaintiff's Fourth Amendment rights for purposes of the first step in the qualified immunity analysis, it is unnecessary to address the second inquiry as to whether the constitutional right

at issue was clearly established.  Defendants' motion with
respect to plaintiff's fourth claim for relief is GRANTED.  Their
motion as to plaintiff's state law claims, the eighth, twelfth
and thirteenth claims for relief, is likewise GRANTED as
plaintiff has not produced any evidence to dispute that Beyer
killed plaintiff's dog in defense of his fellow officer and
police canine.  Beyer's conduct is privileged under state law,
and thus, cannot give rise to a claim of trespass to
personalty/chattels or conversion.  <u>Armstrong</u>, 232 Cal. App. 3d
at 1072 (holding that one is "'privileged to commit an act which
would otherwise be a trespass to or a conversion of a chattel in
the possession of another, for the purpose of defending himself
or a third person against the other, under the same conditions
which would afford a privilege to inflict a harmful or offensive
contact upon the other for the same purpose.'") (citing Rest. 2d
Torts, § 261).

### D.   Excessive Force (5th Claim for Relief)

For the same reasons plaintiff's third claim for relief
fails, her Fourth Amendment excessive force claim likewise fails.
(<u>See</u> Section B <u>supra</u>.)  There is no evidence that defendants
applied any force at all to plaintiff.  In fact, plaintiff
concedes in her opposition that she was not "physically harmed by
any officer present . . . on May 13, 2006."  (Opp'n at 19.)
Rather, she states she included this claim for relief due to the
"extreme emotional upset" she sustained after having found out
that her dog had been killed.  (<u>Id.</u>)  Such severe emotional
turmoil, even assuming the truth of plaintiff's assertions, does
not give rise to a constitutional *excessive force* claim.  <u>See</u>

1  Graham v. Connor, 490 U.S. 386 (1989).  Defendants' motion as to

2  this claim is GRANTED.

3      **E.  Negligence (9th Claim for Relief)**

4      Defendants move for summary judgment on plaintiff's

5  negligence claim, arguing plaintiff cannot demonstrate defendants

6  violated any applicable state statute, and thus, this claim must

7  be dismissed.  Under California law, a public entity or public

8  employee cannot be held liable for an injury, except as provided

9  by statute.  Cal. Gov't Code § 815(a).  "In the absence of a

10  constitutional requirement, public entities may be held liable

11  only if a statute . . . is found declaring them to be liable."

12  County of Sacramento v. Sup. Ct., 8 Cal. 3d 479, 481 (1972).

13  Here, plaintiff both fails in her complaint and in opposing

14  defendants' motion to identify any state statute declaring

15  defendants' conduct in this action unlawful.  As such,

16  defendants' motion as to this claim is GRANTED.

17      **F.  Intentional Infliction of Emotional Distress (10th**

18          **Claim for Relief)**

19      Defendants move to dismiss plaintiff's claim for intentional

20  infliction of emotional distress ("IIED") on the ground that

21  plaintiff lacks evidence to establish the requisite intent by

22  defendants to cause plaintiff harm.  To succeed on a claim of

23  IIED, a plaintiff must demonstrate:

24        (1) extreme and outrageous conduct by the defendant
      with the intention of causing, or reckless disregard

25        of the probability of causing, emotional distress;
      (2) the plaintiff's suffering severe or extreme

26        emotional distress; and (3) actual and proximate
      causation of the emotional distress by the defendant's

27        outrageous conduct.

28

Christensen v. Sup. Ct., 54 Cal. 3d 868, 903 (1991). "Outrageous conduct" requires that the conduct must be so extreme "as to exceed all bounds of that usually tolerated in a civilized community." Id. A defendant must have engaged in that conduct with the intent to cause the plaintiff emotional distress or with the knowledge that emotional distress was substantially certain to result from the defendant's conduct. In other words, a defendant's conduct is in "reckless disregard of the probability of causing emotional distress" if the defendant knows there is a high probability that emotional distress will result and then acts with a deliberate disregard of that probability or with a conscious disregard of that probability. Spackman v. Good, 245 Cal. App. 2d 518, 528 (1966).

Here, plaintiff fails to establish either of these requisite elements. For the reasons set forth above under Section C, plaintiff cannot demonstrate "outrageous conduct" to support an IIED claim. While the death of plaintiff's beloved dog was a tragedy, the undisputed evidence is that Beyer killed Harley in defense of a fellow officer and police canine who were being attacked by the dog. The facts do not support a constitutional claim under the Fourth Amendment, and they likewise do not establish outrageous conduct by defendants.

Additionally, this claim fails because plaintiff offers no evidence to establish defendant Beyer's intent to cause plaintiff severe emotional distress. Again, the undisputed evidence establishes that Beyer shot Harley in order to protect Officer Alger and Rico. Plaintiff offers no evidence to the contrary, which establishes either directly or circumstantially that Beyer

shot the dog with the intention of causing plaintiff harm or with a deliberate disregard for the probability of causing her harm.

Thus, the court grants defendants' motion as to this claim for these alternative reasons.

**G.   California Civil Code § 52.1 (14th Claim for Relief)**

California Civil Code § 52.1 permits individuals to sue for damages as a result of constitutional, federal or state violations.   Unlike Section 1983, Section 52.1 does not require that the defendant act under color of law.   <u>Jones v. Kmart Corp.</u>, 17 Cal. 4th 329 (1998).   In pertinent part, Section 52.1(b) provides:

> Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may-institute and prosecute in his or her own behalf a civil action for damages including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right secured or rights secured.

Thus, the statute itself does not provide any substantive protections.   Rather, it enables individuals to sue for damages as a result of other constitutional, federal or state violations. <u>Reynolds v. County of San Diego</u>, 84 F.3d 1162 (9th Cir. 1996).

Defendants move to dismiss this claim on the ground that plaintiff cannot establish any of her other claims for relief, asserting various constitutional and state law violations, and therefore, she cannot maintain this claim.   However, as set forth above, the court does not grant defendants' motion with respect to plaintiff's Fourth Amendment claims for unlawful search and seizure of her residence (and the related trespass to land

claim), and thus, defendants' argument does not provide grounds
to dismiss this claim for relief.

However, plaintiff's claim cannot be sustained on other
grounds.  To establish violation of Section 52.1, a plaintiff
must demonstrate that through "threats, intimidation, or
coercion" the defendant interfered with her exercise and
enjoyment of rights under federal or state law.  The word
"interferes" as used in the § 52.1 means "violates."  Austin B.
v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 882 (2007).
The essence of a Section 52.1 claim is that "the defendant, by
the specified improper means (i.e., 'threats, intimidation or
coercion'), tried to or did prevent the plaintiff from doing
something he or she had the right to do under the law or to force
the plaintiff to do something that he or she was not required to
do under the law."  Id. at 883.  Here, plaintiff does not allege
any facts, let alone produce evidence, of any acts by defendants
that could be construed as threats, violence or intimidation that
actually caused plaintiff a loss of her rights or that attempted
to do so.  Thus, because plaintiff cannot establish this
essential element of a Section 52.1 claim, defendants' motion is
GRANTED as to this claim.

### H.   Punitive Damages

Defendants move to dismiss plaintiff's claim for punitive
damages, arguing such damages are not legally recoverable against
municipalities and that with respect to defendant Beyer,
plaintiff cannot demonstrate he acted with malice or in conscious

disregard of her rights.[17]   Plaintiff concedes that punitive
damages may not be awarded against a municipality in actions
brought under Section 1983.  (Opp'n at 18); <u>City of Newport Beach</u>
<u>v. Fact Concerts, Inc.</u>, 453 U.S. 247 (1981).

     As to defendant Beyer, punitive damages may be sought, but
here, no facts support such an award for the reasons set forth
under Section C, <u>supra</u>.  Pursuant to California Civil Code
§ 3294, punitive damages may be awarded where the "defendant has
been guilty of oppression, fraud, or malice."  "Oppression" is
defined as "despicable conduct that subjects a person to cruel
and unjust hardship in conscious disregard of that person's
rights."  Cal. Civ. Code § 3294(c)(2).  "Malice" means
"despicable conduct which is carried on by the defendant with a
willfully and conscious disregard of the rights and safety of
others."  <u>Id.</u> at 3294(c)(1).  Here, plaintiff offers no evidence
to dispute that Beyer shot and killed Harley in defense of Algers
and Rico, who were being attacked by the dog.  Plaintiff has not
proffered any evidence to show that Beyer's conduct was
"despicable" and carried out with a willful and conscious
disregard of plaintiff's rights.  Accordingly, the court grants
defendants' motion as to plaintiff's punitive damages claim.

**CONCLUSION**

     For the foregoing reasons, defendants' motion for summary
judgment is GRANTED in part and DENIED in part.  The court grants
the motion with respect to all claims, except plaintiff's claims
for unlawful search and seizure of her residence in violation of

---

     [17]   Plaintiff seeks punitive damages based only on the
killing of her dog Harley by officer Beyer.

25

the Fourth Amendment (first and second claims for relief) and

trespass to real property (sixth claim for relief).  With respect

to those claims, defendants' motion is denied.

        IT IS SO ORDERED.

 DATED: September 9, 2008

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

26