UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DENA PEREZ, an individual,

        Plaintiff,

   v.

CITY OF PLACERVILLE, GEORGE NEILSEN, and CHRISTIAN BEYER,

        Defendants.

NO. CIV. S-07-927 FCD GGH

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

This matter is before the court on defendants City of Placerville (the "City") and Christian Beyer's ("Beyer") (collectively, "defendants") supplemental motion for summary judgment. By minute order of November 3, 2008, the court granted defendants permission to file the instant motion in order to address a potentially dispositive legal issue.[1]  (Docket #38.)

---

[1] Because the court finds that oral argument will not be of material assistance, it submits this matter on the briefs. E.D. Cal. L.R. 78-230(h).

1

At the time of the final pretrial conference, defendants raised the argument that Beyer was entitled to qualified immunity as to plaintiff's remaining claim for unlawful search and seizure of her residence in violation of the Fourth Amendment, and that Beyer was also entitled to immunity under state law as to plaintiff's related claim for trespass to real property.[2] Defendants asked the court to rule on these issues in the context of the preparation of the final pretrial conference order. Because such consideration of dispositive legal issues is only properly raised via a noticed motion, the court continued the final pretrial conference and allowed defendants to file the instant motion.[3]  (Docket #38.)

For the reasons set forth below, the court DENIES defendants' supplemental motion for summary judgment.  Defendants have not shown that Beyer is entitled to immunity under either federal or state law.

---

[2] In its September 9, 2008, order on defendants' original motion for summary judgment (the "September 9 Order"), the court granted defendants' motion as to all of plaintiff's claims for relief, except plaintiff's claims for unlawful search and seizure of her residence in violation of the Fourth Amendment (first and second claims for relief) and trespass to real property (sixth claim for relief).  With respect to those claims, the court found triable issues of fact remained as to whether defendants had probable cause to believe that the parolee Masse lived at plaintiff's residence, thereby providing legal grounds to enter the premises without a warrant.  (Docket #34 at 3:2-11.)

[3] Defendants asserted they had raised these issues in their original motion for summary judgment but the court did not rule on them.  The court re-examined defendants' initial motion; defendants did not clearly move for summary judgment on these bases.  However, because there were some, albeit vague references, to these issues in their motion, the court granted defendants leave to file this supplemental motion.  Said permission was granted particularly because if defendants prevailed on the issues, the entirety of this case would be dismissed, thus obviating the need for trial.

**BACKGROUND**

On this motion, the parties do not rely on new evidence pertinent to the issues at hand. Therefore, the court restates verbatim below the facts as set forth in its September 9 Order, granting in part and denying in part defendants' original motion for summary judgment:[4]

On May 13, 2006, the Placerville Police Department ("PPD") received a "CLETS" document[5] from the Amador County Sheriff's Department, which consisted of an Abstract of Warrant regarding a suspect named, Gary Joseph Masse. (RUF ¶ 12.) The Abstract of Warrant indicated Masse was not in custody. (RUF ¶ 14.)

---

[4] Unless otherwise noted, the court finds the following facts undisputed. (See Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts, filed July 21, 2008 ["RUF"].) In some critical respects, plaintiff attempts to dispute defendants' undisputed facts but she has not submitted material and admissible evidence to do so. As such, the court finds those facts undisputed. Where plaintiff has submitted material and admissible evidence to dispute relevant facts, the court construes the facts in the light most favorable to plaintiff.

The parties have filed various objections to each other's evidence. To the extent the court cites to any such objected-to evidence, it rules on the objection herein. In all other respects, the parties' evidentiary objections are overruled as moot since the court does not rely on said evidence as a basis for its findings.

[5] "CLEATS" refers to the California Law Enforcement Telecommunications System. Plaintiff objects to the admission of the document on hearsay grounds. However, said document is properly admitted under the hearsay exception for official records. People v. Martinez, 22 Cal. 4th 106, 134 (2000) (affirming the admission of a CLEATS document, as evidence the defendant was a habitual offender, under the official records exception to the hearsay rule).

Based on prior contact with Masse,[6] PPD officers believed Masse was plaintiff's boyfriend and resided with her at plaintiff's residence located at 2335 Greenwing Lane, Placerville, California. (RUF ¶s 5, 8, 17, 58.) As a condition of his parole, Masse had also previously given that address to law enforcement as his legal residence. (RUF ¶ 4.) Masse, however, did not own the residence, which was owned solely by plaintiff. (Pl.'s Add'l Disputed Facts ["ADF"], ¶ 69.)[7] The officers were also aware that Masse was a parolee and had waived his rights with regard to searches and seizures of his person, property and residence. (RUF ¶ 57.) The officers additionally knew that Masse had attempted to evade arrest on a prior occasion at the 2335 Greenwing Lane residence. (RUF ¶ 18.)

PPD Sergeant Cannon ("Cannon") confirmed that the warrant was a valid, active arrest warrant. (RUF ¶ 16.) No one at the PPD contacted Masse's parole officer to request any information about Masse. (ADF ¶ 64.) Thereafter, Cannon and PPD officers Christopher Hefner ("Hefner"), Jason Alger ("Alger"), Beyer and police canine, Rico, traveled to plaintiff's residence intending to arrest Masse. (RUF ¶ 19.) The officers did not have a search warrant for the premises. (ADF ¶ 70.) Upon arrival at the

---

[6] Previously, on March 23, 2006, Masse was involved in a hit and run motor vehicle accident. (RUF ¶ 1.) As a result of that incident, PPD officers attempted to arrest Masse at plaintiff's residence but he fled the scene. (Id.) Masse was subsequently taken into custody by PPD officers on April 4, 2006, for violation of his parole. (RUF ¶ 2.) He was booked into the El Dorado County Jail by the PPD. (Id.)

[7] See Defs.' Resp. to Pl.'s Additional Disputed Facts, filed July 29, 2008 (Docket #29).

4

residence, Cannon and Hefner went to the front door. (RUF ¶ 21.) Alger and Beyer went to the right of the residence intending to gain entry to the backyard in order to secure the rear of the residence should Masse attempt to flee as he had done in the past. (RUF ¶ 21.)

To ascertain whether a dog was on the premises, Alger, who had police canine Rico with him, made sounds to elicit a response from a dog. (RUF ¶ 27.)[8] There was no response. (RUF ¶ 27.) Alger looked over the fence and did not see a dog in the backyard. (RUF ¶ 26.) He then cracked open the gate to the backyard. (RUF ¶ 29.) The head of a Rottweiler immediately pushed through the gate and attacked Alger and canine Rico. (RUF ¶s 30, 31.) The Rottweiler was plaintiff's dog, Harley. (RUF ¶ 30.) Beyer used pepper spray on both dogs but there was no reaction. (RUF ¶ 33.) Beyer then shot Harley twice but there was no response. (RUF ¶ 34.) He then shot Harley a third time, at which point the dog walked away. (RUF ¶ 35.) The incident occurred in less than one minute and it took place on the street side of the fence. (RUF ¶s 36, 37.)[9] The officers then entered the backyard to secure the rear of the premises, believing their

---

[8] Plaintiff contends the officers were aware of plaintiff's dog, and that there was a "Beware of Dog" sign on the gate the officers opened. (ADF ¶s 73, 74.)

[9] According to the officers, they arrived at the residence at 7:34 p.m.; Harley was shot at 7:37 p.m.; plaintiff arrived at the residence at 7:38 p.m.; plaintiff was advised Harley had been shot at 7:40 p.m.; and by 7:50 p.m., Officer Cannon left the scene with plaintiff and Harley to go to the nearest veterinarian's office. (RUF ¶s 39-41, 43, 46.) Plaintiff does not have any material, admissible evidence which disputes these facts.

5

position had been jeopardized. (RUF ¶ 38.)

Plaintiff arrived at the residence minutes after the shooting took place. (RUF ¶s 22, 41.) She was advised by the officers that Harley had been shot. (RUF ¶ 43.) Plaintiff told the officers that Masse was incarcerated in a correctional facility in Tracy, California. (RUF ¶ 42.) No officer searched plaintiff. (RUF ¶ 51.)

After briefly speaking with plaintiff, Cannon radioed dispatch requesting that they locate an emergency veterinarian's office in the area. (RUF ¶ 44.) Alger assisted plaintiff in getting Harley into the back of a police vehicle. (RUF ¶ 45.) Cannon then drove plaintiff and Harley to a veterinarian's office in Shingle Springs, California. (RUF ¶ 46.) Cannon left plaintiff and Harley at the office, after confirming that there was a veterinarian present to care for the dog. (RUF ¶ 48.) Harley subsequently died. (RUF ¶ 49.)

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the

moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. See Nissan Fire & Marine, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)

**ANALYSIS**

As to plaintiff's constitutional claim for unlawful search and seizure of her residence in violation of the Fourth Amendment, defendants move for summary judgment on the ground of qualified immunity. Public officials are entitled to qualified immunity for acts that do not violate "clearly established . . . constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Prior to the United States Supreme Court's decision in Pearson v.

Callahan, 2009 WL 128768 (S.Ct. Jan. 21, 2009), when considering a defendant's motion for summary judgment on the ground of qualified immunity, a court had to consider as "[t]he threshold question . . . whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the officer's conduct violated a constitutional right." Bingham v. City of Manhattan Beach, 329 F.3d 723, 729 (9th Cir. 2003), superceded by 341 F.3d 939 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). If a violation could be made out, the next step was to determine whether the right violated or the law governing the official's conduct was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (quoting Saucier, 533 U.S. at 202); Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir. 1993). However, in Pearson, the Court held that consideration of the issues in this sequence is no longer mandatory. 2009 WL 128768 at *9. Rather, judges may exercise their "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." Id. Ultimately, where a defendant's conduct violates constitutional rights and the law is clearly established, the defendant may not claim qualified immunity.

In this case, the court has previously addressed what had been known as the "threshold" inquiry in its September 9 Order. As to that issue, the court held plaintiff raised sufficient evidence to establish a triable issue of fact that her Fourth Amendment rights were violated by defendant Beyer's warrantless entry on to her property. (Docket #34 at 8-13.) It is thus the

law of the case that considering the facts in the light most favorable to plaintiff, the facts show officer Beyer's conduct violated plaintiff's constitutional rights.

The only issue then on this motion is the previously denoted-second step in the qualified immunity analysis--whether the right violated or the law governing the officer's conduct was clearly established. For a constitutional right to be clearly established, "its contours must be sufficiently clear that a reasonable [officer] would understand that what he is doing violates that right at the time of his conduct." Eng v. Cooley, 2009 WL 81870, *12 (9th Cir. January 14, 2009) (internal quotations and citation omitted). Thus, the Supreme Court held in Saucier that: "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." 533 U.S. at 201-02.

Here, the law governing the officers' conduct in this case was clear. At the time of the incident in question, May 13, 2006, the Ninth Circuit had clearly held in Motley v. Parks, 432 F.3d 1072, 1080 (9th Cir. 2005) that before conducting a warrantless search pursuant to a parolee's parole condition, law enforcement officers must have "probable cause to believe that the parolee is a resident of the house to be searched." This is a higher standard than a mere well-founded suspicion, and it is a relatively stringent standard. (Docket #34 at 9.) The Motley

court emphasized that officers must be "reasonably sure that they are at the *right* house" before relying on a parolee's search condition to search a person's home. Id. at 1079 (emphasis in original). Thus, the law required that the officers here, including defendant Beyer, have "very strong facts" to believe a parolee resides at a particular location. Id. at 1079-80; (Docket #34 at 9).

Defendants' argument to the contrary fails to frame the issue correctly. The issue on this motion is not whether the officers had a legal duty to further investigate the validity of the Abstract of Warrant they received for Masse, which indicated he was not in custody, but whether they had legal grounds to enter plaintiff's premises without a warrant. That latter issue is controlled by Motley's probable cause standard, which was clearly established law at the time of the incident. There can be no question as to what Motley required--the officers needed *strong facts* to support their belief that the parolee Masse lived at plaintiff's residence. See Enq, 2009 WL 81870, *13 (holding that where the rule of law had "long been the law of the land" there could "no confusion" as to whether the plaintiff's speech was protected by the First Amendment).

In sum, for the reasons set forth in the court's September 9 Order, this court found that triable issues of fact remained as to whether the officers had the requisite probable cause to enter plaintiff's premises in search of the parolee Masse. (Docket #34 at 13:8-10 ["Under (the facts as construed in the light most favorable to plaintiff), a reasonable jury could find in plaintiff's favor that defendants lacked probable cause to

10

believe that Masse resided at plaintiff's home.].)  Thus, it will be for the jury in this case to ultimately determine whether defendant Beyer had strong facts to believe that Masse lived at plaintiff's residence.  The court finds here that the law governing the officers' conduct in this case was clearly established.  Thus, because defendant Beyer's conduct may be found to have violated plaintiff's constitutional rights and the governing law is clearly established, he is not entitled to qualified immunity.  Bingham, 329 F.3d at 729.

As to plaintiff's state law claim of trespass to real property, defendants argue in one brief paragraph of their motion that defendant Beyer is entitled to immunity pursuant to California Government Code § 820.2.  (Mem. of P. & A., filed Dec. 15, 2008, at 18:15-19.)  Said Section provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Defendants offer no argument, let alone citation to legal authority or evidence, to establish that defendant Beyer's actions in this case--the warantless entry on to plaintiff's property--was done pursuant to any discretionary authority vested in him by state law.  Because defendants wholly fail to support this argument, the court denies their motion as to this claim.[10]

---

[10] The court notes that because this state law claim survives summary judgment, the City remains a defendant in this case.  While the court dismissed plaintiff's federal claims for relief against the City (as plaintiff had failed to establish a basis for Monell liability against the City), plaintiff may press her state law claim against the City under a theory of *respondeat*

11

**CONCLUSION**

For the foregoing reasons, defendants' supplemental motion for summary judgment is DENIED in its entirety.

IT IS SO ORDERED.

DATED: February 3, 2009

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

*superior*.  (Docket #34 at 13-15.)  Defendants concede this fact in their instant motion.  (Mem. of P. & A. at 18:12-14.)

12